UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GORSS MOTELS, INC.,                    :
     Plaintiff,                         :
                             :
v.                                     :     No. 3:17cv485 (DJS)
                             :
AMERICAN TEX-CHEM                      :
CORPORATION, ET AL.,                   :
     Defendants.                        :

RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Gorss Motels, Inc. ("Gorss"),[1] brings this action against the defendant,

American Tex-Chem Corporation ("AmTex"),[2] claiming violations of the Telephone Consumer

Protection Act of 1991 ("TCPA"), as amended by the Junk Fax Prevention Act of 2005, 47

U.S.C. § 227. Gorss alleges that during the time period between June 11, 2013, and July 15,

2014, AmTex sent a total of twenty-four unsolicited and unauthorized facsimiles ("faxes") to

Gorss and that these faxes did not contain the "opt-out notice" required by federal law. Pursuant

to Rule 12 (b)(6) and Rule 56 of the Federal Rules of Civil Procedure, AmTex has filed a motion

seeking the dismissal of the Amended Complaint, or, in the alternative, summary judgment.  For

the reasons stated below, AmTex's motion is denied.

## I.     STANDARD

Both Gorss and AmTex have presented matters outside the pleadings in connection with

AmTex's pending motion. Because the Court has taken these matters into consideration for the

---

[1] Gorss also seeks the certification of a class of persons who received similar facsimiles from
AmTex. The Court need not consider the issue of class certification for purposes of ruling on the
motion before it.

[2] The Amended Complaint also names as defendants "JOHN DOES 1-5 [who] will be identified
through discovery, but are not presently known." (Doc. # 32, at 3, ¶ 10).

purpose of ruling on the motion, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ.P. 12 (d). Both parties have filed the documents pertaining to a motion for summary judgment required by the Federal and Local Rules of Civil Procedure.

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute." *American International Group, Inc. v. London American International Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (internal quotation marks omitted).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute concerning a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party "must present specific evidence demonstrating a genuine dispute." *Gannon v. UPS*, 529 F. App'x 102, 103 (2d Cir. 2013).

In reviewing the record, the court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enterprises, L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013). Summary judgment is improper if there is any evidence in the record from which a reasonable factual

inference could be drawn in favor of the nonmoving party. *See Security Insurance Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## II.  FACTS

The plaintiff, Gorss Motels, Inc., operated a Super 8-franchised motel/hotel in Connecticut. The defendant, American Tex-Chem Corporation, is a small business that sells supplies to hotels. On December 8, 2008, Gorss opened an account with AmTex. In opening the account, Gorss provided certain information, including its fax number, to AmTex. Gorss also listed its fax number in a public Super 8 motel/hotel directory.

Between December 8, 2008, and April 30, 2011, Gorss purchased supplies from AmTex on at least ten occasions. On two of those occasions, Gorss initiated the purchase by sending a fax to AmTex. Gorss did not make any additional purchases from AmTex after April 30, 2011.

Between June 11, 2013, and July 15, 2014, AmTex sent a total of twenty-four faxes to Gorss advertising products being sold by AmTex. Each fax was one page in length and contained one of three versions of an "opt-out" notice at the bottom of the page. The first version, which was included on two faxes, provided as follows: "To have your number removed, go to www.nothx.net or call 1-866-553-1280, and Please Follow Instructions (Fax Ext # 00628)." (Doc. # 40-3, at 2-3). The second version, which was on three of the faxes, stated, "To have your number removed, call 1-866-653-1280, and Please Follow Instructions (Fax Ext # 00628)." (*Id.* at 4-6). The third version, included on nineteen faxes, stated, "To have your number removed from future faxes, call 1.855.656.4641." (*Id.* at 7-25).

## III. DISCUSSION

The TCPA, as amended by the Junk Fax Prevention Act, provides in part that, "It shall be unlawful for any person within the United States . . . to use any . . . device to send, to a telephone

facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. § 227 (b) (1)(C). "The term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a)(5).

There is an exception to the TCPA's prohibition against the transmission of unsolicited advertisements. An unsolicited advertisement may be sent by fax if: (1) the sender has "an established business relationship with the recipient"; (2) the recipient has voluntarily communicated the fax number to the sender within the context of the established business relationship; and (3) "the unsolicited advertisement contains a notice meeting the requirements under paragraph [b] (2)(D)."  47 U.S.C. § 227 (b) (1) (C)(i),(ii),(iii). For purposes of this exception, the term "established business relationship" means "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business . . . on the basis of an inquiry, application, purchase or transaction by the business . . . regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200 (f)(6).

Paragraph (b)(2)(D) of the TCPA directs the Federal Communications Commission ("FCC") to adopt regulations providing, among other things, that an unsolicited advertisement transmitted by fax must contain an opt-out notice that meets specific requirements, including, but not limited to, the following: (1) the notice must be "clear and conspicuous and on the first page of the unsolicited advertisement"; (2) the notice must state that the recipient may make a request that the sender not send any future unsolicited advertisements to a fax machine and that it is unlawful for the sender to fail to comply within the shortest reasonable time with any such

request "meeting the requirements under subparagraph (E) [3]"; and (3) the notice must include a domestic contact telephone, a fax machine number, and a cost-free mechanism, by means of which a recipient may make a request pursuant to the notice at any time on any day of the week. 47 U.S.C. § 227 (b)(2)(D)(i)-(vi).

AmTex argues it is entitled to summary judgment for four reasons: (1) Gorss lacks standing because it failed to allege a cognizable injury; (2) Gorss consented to receive the faxes; (3) the faxes were permissible on the basis of an established business relationship between the parties; and (4) Gorss's opt-out notice claims are frivolous. In response to AmTex's motion, Gorss contends that: (1) AmTex's standing argument fails as a matter of law; (2) AmTex has failed to demonstrate that Gorss gave prior express permission for the transmission of the faxes; and (3) the affirmative defenses of an established business relationship and prior consent are not available to AmTex because the faxes at issue did not contain opt-out notices that complied with federal law.

## A.  STANDING

AmTex contends that Gorss lacks standing because it failed to allege a cognizable injury sufficient to confer Article III standing. According to AmTex, the Amended Complaint "alleges nothing more than a 'bare procedural violation' which is insufficient to confer Article III standing under *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)." (Doc. # 36-1, at 20). In *Spokeo*, the Supreme Court reiterated the requirement that a plaintiff clearly allege facts demonstrating an injury that is both particularized and concrete on order to establish standing

---

[3] Subparagraph (E) directs the FCC to include a provision in its regulations that a request not to send future unsolicited fax advertisements must comply with specified requirements, e.g., the request must identify "the telephone number or numbers of the telephone facsimile machine or machines to which the request relates . . . ." 47 U.S.C. § 227 (E).

under Article III of the U.S. Constitution. Although "a bare procedural violation, divorced from

any concrete harm" would not "satisfy the injury-in-fact requirement of Article III," an

intangible harm may be concrete and "the violation of a procedural right granted by statute can

be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1549.

In its Amended Complaint, Gorss alleges the following damages resulting from the faxes

sent by AmEx:

> Receiving the Defendants' junk faxes caused Plaintiff . . . to lose paper and
> toner consumed in the printing of the Defendants' faxes. Moreover, the
> Defendants' faxes used the Plaintiff's . . . telephone lines and fax machine.
> The Defendants' faxes cost the Plaintiff . . . time, as the Plaintiff . . . wasted . . .
> time receiving, reviewing and routing the Defendants' unauthorized faxes. . . .
> The Defendants' faxes unlawfully interrupted the Plaintiff's . . . privacy interests
> in being left alone.

(Doc. # 32, at 13-14, ¶ 34). Other courts within this district have considered and rejected a lack

of standing argument under similar circumstances. In *Gorss Motels, Inc. v. AT&T Mobility, LLC*,

299 F. Supp. 3d 389, 394 (D. Conn. 2018), Judge Arterton found the same allegations of harm

that are raised in the instant case sufficient to demonstrate concrete injury:  "Plaintiff alleges

Defendant's unsolicited faxes caused loss of toner consumed in the printing of Defendant's fax;

use of its telephone lines and fax machine; the waste of its employees' time spent receiving,

reviewing, and routing the unauthorized fax; and interference with Plaintiffs privacy interest in

being left alone. Defendant does not dispute that these allegations are sufficient to show concrete

injury under *Spokeo*." Judge Arterton later concluded that "the same concrete interests Congress

sought to protect by prohibiting unsolicited fax advertisements also pertain when the opt-out

language is non-compliant, as is alleged here." *Id.* at 394-95.

In *Gorss Motels, Inc. v. A.V.M. Enterprises, Inc*., No. 3:17-cv-1078 (VAB), 2018 U.S.

Dist. LEXIS 17748, at *13 (D. Conn. Feb. 2, 2018), "Gorss Motels allege[d] that the five

unsolicited advertisements that [the defendant] allegedly sent without opt-out notices harmed

them by wasting their ink, paper, and time." In rejecting the defendant's lack of standing

argument in that case, Judge Bolden stated that "[t]hose alleged harms are precisely the harms

that the Junk Fax Prevention Act, 47 U.S.C § 227, aims to address." *Id.* This Court likewise, and

for the same reasons stated in the cases quoted above, concludes that the allegations of harm

specified in the Amended Complaint are sufficient to show concrete harm under *Spokeo*.  For

that reason, AmTex's motion for summary judgment is denied as to the claim that Gorss lacks

standing to maintain this action.

### B.  CONSENT

The TCPA prohibits the transmission by fax of unsolicited advertisements. AmTex

contends that "[b]y providing its fax number to AmTex, faxing in two purchase orders, and

making a total of ten purchases from AmTex, Plaintiff unquestionably consented to receive faxed

advertisements." (Doc. # 36-1, at 14). As a result, according to AmTex, the faxes it sent to Gorss

did not violate the TCPA. In presenting this argument, Gorss cites to language from the FCC

explaining changes made to its rules and regulations in order to implement the Junk Fax

Prevention Act:

> The provision of a telephone facsimile number to a business or other entity
> reflects a willingness to receive faxes from that entity. Accordingly, it would
> be permissible for the sender to fax an advertisement to a recipient that had
> provided a facsimile number to the sender, for example, on an application,
> information request, contact information form, or membership renewal form.

Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax

Prevention Act of 2005, 71 FR 25967-01, 2006 WL 1151584 (May 3, 2006).

Although the language quoted above appears at first glance to support AmTex's

argument, that language is quoted out of context. AmTex's argument is that its faxes were

consented to and, for that reason, were not unsolicited. The FCC language quoted by AmTex appears in a document which by its terms "amends [the FCC's] rules on *unsolicited* facsimile advertisements . . . ." *Id.* (emphasis added). The purpose of the rule change was to "amend[] . . . the Commission's rules to expressly recognize an EBR [established business relationship] exemption from the prohibition on sending unsolicited facsimile advertisements." *Id.*  Language regarding a rule change that pertains solely to certain unsolicited faxes does not support AmTex's argument that the faxes it sent were solicited, i.e., that Gorss had given prior express permission for the transmission of those faxes.

AmTex also argues that "in *CE Design Ltd. v. Prism Business Media, Inc.*, No. 07 C 5838, 2009 WL 2496568 (N.D. Ill. Aug. 12, 2009), [the court found that] there was no TCPA violation because the plaintiff voluntarily provided its fax number and purchased three publications from defendant." (Doc. # 36-1, at 14). In *CE Design*, the court specifically noted that "[b]ecause the alleged violation occurred before the adoption of the JFPA [Junk Fax Prevention Act], in this case the court must apply the law as it existed before the passage of that Act." *CE Design*, 2009 WL 2496568, at *3. The defendant in *CE Design* argued that it was not liable under the TCPA because of an established business relationship it had with the defendant. In that regard, the court noted that "[t]his so-called 'EBR exemption' to the TCPA's general prohibition of unsolicited fax advertisements [did] not appear in the [original] TCPA itself. Rather, it [was] a creature of the FCC's rulemaking powers, and its validity and application was the subject of some contention prior to 2005, when Congress passed the Junk Fax Protection Act ('JFPA'), amending the TCPA to codify the EBR exemption." *Id.* In this case, which involves faxes sent long after 2005, the Court must apply the law is it existed *after* the passage of the Junk Fax Protection Act.

Although AmTex argues that Gorss consented to the receipt of the faxes in question, the two sources of authority it relies upon to support that argument (the FCC rules amendment and *CE Design*) both addressed the established business relationship exemption. By definition, the established business relationship relates to unsolicited faxes: "It shall be unlawful . . . to send, to a telephone facsimile machine, an *unsolicited* advertisement, unless . . . the *unsolicited* advertisement is from a sender with an established business relationship with the recipient . . . ." 47 U.S.C. § 227 (b)(1)(C)(i) (emphasis added). As previously noted, an unsolicited advertisement is one transmitted to a person "without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a)(5).

The Court does not agree that Gorss's voluntary communication of its fax number to AmTex when it opened a new account in 2008 constituted "prior express invitation or permission" to transmit the faxes in question. In that regard, the Court notes that one of the requirements of the established business relationship exception, which again pertains to unsolicited faxes, is that "the sender obtained the number of the telephone facsimile machine through . . . the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement . . . ." 47 U.S.C. § 227 (b)(1)(C) (ii)(I). While the voluntary communication of a fax number could lend support to an argument that there was an established business relationship between the parties, it does not, in and of itself, support an argument that the fax advertisements were not unsolicited, i.e., that there had been prior express invitation or permission for their transmission. AmTex has not demonstrated that Gorss provided prior express consent for the transmission of the faxes at issue. *See Rawlins v. Stoneberry & Mason Cos., Inc.,* No. 1:15-cv-296 (BKS/CFH), 2016 U.S. Dist. LEXIS 184937, at *8 (N.D.N.Y. Sept. 1, 2016) (internal quotation marks omitted) ("Prior

express consent is an affirmative defense to an alleged TCPA violation for which the defendant bears the burden of proof.").  AmTex's motion for summary judgment is denied as to the claim that there could be no violation of the TCPA because Gorss had consented to the transmission of the faxes sent to it by AmTex.

## C.  ESTABLISHED BUSINESS RELATIONSHIP

AmTex also argues that the fax advertisements it sent to Gorss were permissible under the TCPA because of an established business relationship between the two parties. Although Gorss does not deny that it had an established business relationship with AmTex, it contends that "[t]he affirmative defense of EBR [established business relationship], an exception to the TCPA's prohibition against sending unsolicited fax advertisements, is . . . unavailable to AmTex" because the faxes AmTex sent to it did not contain opt-out notices that were compliant with federal law. (Doc. # 39, at 35).

As stated in Gorss's response to the motion for summary judgment, there are three required elements to the established business relationship exception: (1) the sender has "an established business relationship with the recipient"; (2) the recipient has voluntarily communicated the fax number to the sender within the context of the established business relationship; and (3) "the unsolicited advertisement contains a notice meeting the requirements under [federal law]."  47 U.S.C. § 227 (b) (1) (C)(i),(ii),(iii). AmTex's argument based on the established business relationship exception fails to address the third element of that exception, i.e., that the faxes it sent contained notices that met the requirements specified under federal law. AmTex suggests that this Court "need not consider whether these technical requirements have been met because . . . those requirements now apply only to unsolicited faxes and do not apply here." (Doc. # 41, at 9).

This Court has already concluded that AmTex failed to demonstrate that the faxes sent to it by Gorss were not unsolicited, i.e., that there was express prior consent for the transmission of those faxes. Because Gorss alleges that the faxes sent to it by AmTex did not contain opt-out notices that complied with the federal requirements and AmTex has failed to address this issue, AmTex has not met its burden of showing that there is no genuine dispute as to this material fact. Consequently, the motion to dismiss is denied as to the claim that the faxes were permissible under the established business relationship exception to the prohibition against unsolicited fax advertisements.

### D.  OPT-OUT NOTICE CLAIMS

AmTex argues that Gorss's claim regarding non-compliant opt-out notices is legally insufficient and frivolous, because "the FCC regulations that imposed the opt-out requirement on solicited faxes have been <u>invalidated</u> by two Courts of Appeal . . . ." (Doc. # 36-1, at 17).  This argument addresses the opt-out notice issue solely in terms of solicited (consented to) faxes, thereby presuming that the faxes sent by Gorss to AmTex were solicited faxes. AmTex argues at length that *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078 (D.C. Cir. 2017), in which the court held that the FCC exceeded its authority in requiring opt-out notices on solicited faxes, is binding precedent on all federal district courts throughout the country. Gorss argues with equal vigor that the *Bais Yaakov* decision does not bind courts in this Circuit.

Gorss also suggests that "because AmTex cannot establish prior express permission . . ., it does not even get to the '*Bais Yaakov*' issue." (Doc. # 39, at 39).  *Bais Yaakov* recognized that the Junk Fax Prevention Act "requires an opt-out notice on unsolicited fax advertisements," but found further that it "does not require a similar opt-out notice on *solicited* fax advertisements - - that is, those fax advertisements sent with the recipient's prior express invitation or permission."

*Bais Yaakov*, 852 F.3d at 1082. Because the *Bais Yaakov* decision invalidated the FCC's opt-out notice requirements only as to solicited faxes, and AmTex has not demonstrated that the faxes at issue were solicited, the Court finds that, for the purpose of ruling on AmTex's motion for summary judgment, it need not address the question of whether or not the *Bais Yaakov* decision is binding precedent in this Circuit. AmTex's motion for summary judgment is denied as to its argument that Gorss may not pursue its opt-out claim because the opt-out notice requirements "now apply only to unsolicited faxes and do not apply here." (Doc. # 41, at 9).

CONCLUSION

For the reasons stated above, the defendant AmTex's motion for summary judgment (**doc. # 36**) is **DENIED**.

SO ORDERED this     22nd           day of August, 2018.

_____/s/ DJS_____
                   Dominic J. Squatrito
                   United States District Judge

12